UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SI VENTURE HOLDINGS, LLC (also d/b/a SI　　　**Assigned Document No.** ___
VENTURES),
　　　　　　　　　　　　　　　　　　　　　　　Civil Case No.
　　　　　　　　　　　　　Plaintiff(s),　　　　14 Civ. 02261 (TPG)(HBP)

　　　　　　-against-

CATLIN SPECIALTY INSURANCE COMPANY,

　　　　　　　　　　　　　Defendant(s).
-----------------------------------------------------------------X

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
SUMMARY JUDGMENT**</u>

1

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT………………………………………………….2

BACKGROUND …………………………………………..…………………..2

DISCUSSION……………………………………………………………………5

    A.     LEGAL STANDARD……………………..………………….....5
    B.     SECTION II.B OF THE POLICY SHOULD BE DECLARED VOID AS AGAINST PUBLIC POLICY…………………………………………5
    C.     DEFENDANT HAS WAIVED, AND IS ESTOPPED FROM RAISING, ANY ADDITIONAL GROUNDS FOR DENIAL OTHER THAN THAT WHICH WAS SET FORTH IN THE DENIAL LETTER DATED JANUARY 24, 2014 ……………………………………………….....9

CONCLUSION…………………………………………………………….13

## I. PRELIMINARY STATEMENT

It is an established interest of society to protect the public and environment from the harmful effects of pollution. Where an insured is obliged to take action and commence pollution clean-up quickly and appropriately upon discovering potentially hazardous materials during excavation pursuant to City, State, and/or Federal rules, regulations and laws, a Pollution Liability Insurance Policy which contains a provision permitting an insurance company to affect, impede, or otherwise interfere with an insured's expeditious compliance with the law until it "approves" clean-up costs, should be declared void as against public policy. To withhold the expeditious compliance of City, State and/or Federal rules, regulations, and laws, because an insured is forced to wait for a for-profit insurance company's "approval", curtails the very objective for which these rules, regulations, and laws, were enacted.

## II. BACKGROUND

By way of background, Plaintiff SI VENTURE HOLDINGS, LLC (also d/b/a SI VENTURES) (hereinafter "Plaintiff") is the owner of the property located at 130 Bay Street Landing in Staten Island, New York (hereinafter the "Subject Property"). An affidavit from Timothy Yantz, the Vice President of SI VENTURE HOLDINGS, LLC (also d/b/a SI VENTURES) is annexed to Plaintiff's Affirmation in Support as EXHIBIT A and incorporated by reference herein.

In consideration for premium fully paid, CATLIN SPECIALTY INSURANCE COMPANY (hereinafter "Defendant") issued a Site Pollution Liability Insurance Policy under policy number stv-204955-1016 (hereinafter the "Policy") for the policy period between October 17, 2011 and October 17, 2016 (hereinafter the "Policy Period"), which covered the excavation, removal, and disposal of contaminated soil, subject to any enforceable provisions in the policy

therein, at the Subject Property. A copy of the Catlin Site Pollution Liability Insurance Policy is annexed Plaintiff's Affirmation in Support as EXHIBIT B and incorporated by reference herein.

While removing debris and rocks as part of ongoing construction and renovation at the Subject Property, Plaintiff uncovered large piles of petroleum contaminated soil. On or about February 1, 2013, as was required by law, Plaintiff arranged for testing of the dirt by its consultant PAL Environmental Services. The soil was confirmed to be hazardous by American Analytical Laboratories, LLC on or about March 21, 2013. A copy of PAL Environmental Services' letter dated March 21, 2013 is annexed to Plaintiff's Affirmation in Support as EXHIBIT C and incorporated by reference herein. A copy of the American Analytical Laboratories, LLC report dated March 20, 2013 is annexed to Plaintiff's Affirmation in Support as EXHIBIT D and incorporated by reference herein.

Pursuant to the New York State Department of Environmental Conservation guidelines, Plaintiff was required to transport the contaminated soil to a facility approved for disposal of such contaminated materials in Carteret, New Jersey. Between April 2013 and June 2013, Plaintiff excavated, removed, and transported approximately two thousand four hundred ninety one (2,491) tons of contaminated soil, and approximately nine hundred (900) yards of concrete from the Subject Property. Copies of the Clean Earth of Carteret transportation manifests are annexed to Plaintiff's Affirmation in Support as EXHIBIT E and incorporated by reference herein.

As a result of its compliance with governmental law with regard to the testing, excavation, and disposal of the contaminated soil, Plaintiff incurred significant clean-up costs, believed to be in excess of two hundred sixty thousand ninety nine dollars ($260,099.00). Copies of the PAL Environmental Services' invoices dated May 28, 2013 and June 11, 2013 are

annexed to Plaintiff's Affirmation in Support as EXHIBIT F and are incorporated by reference herein.

On December 5, 2013, and within the Policy Period, Plaintiff submitted a claim to Defendant for the reimbursement of the clean-up costs and testing pursuant to the Policy. By letter dated January 24, 2014, Defendant denied the above-referenced covered loss pursuant to Section II.B. of the Policy, taking the position that "coverage is not provided for costs incurred without our approval" and "SI Ventures incurred clean-up costs without prior written consent from Catlin. Accordingly, pursuant to the requirements set forth in Section II.B. of the Policy, coverage is not afforded for such costs." Section II.B. of the Policy states:

*II. DEFENSE AND SETTLEMENT*

> *B. The Insured shall not assume or admit liability, make any payment, consent to any judgment, settle any Claim or Protective Third Party Claim or incur any Clean-Up Cost, Claim Expense or Protective Third Party Claims Expense without the proper written consent of the Insurer, which consent shall not be unreasonably withheld. The Insurer shall not be liable for any expense, settlement, assumed obligation or admission to which it has not consented.* A copy of Catlin's Denial Letter dated January 24, 2014 is annexed to Plaintiff's Affirmation in Support as EXHIBIT G and incorporated by reference herein.

On or about March 3, 2014, this action was commenced in the Supreme Court of the State of New York, County of New York. A copy of the Summons and Verified Complaint is annexed to Plaintiff's Affirmation in Support as EXHIBIT H and incorporated by reference herein. On or about April 1, 2014, Defendant filed and served a Notice to State Court of Removal to Federal Court. A copy of the Notice to State Court of Removal to Federal Court is annexed to Plaintiff's Affirmation in Support as EXHIBIT I and incorporated by reference herein. A copy of Defendant's Answer with Affirmative Defenses dated April 17, 2014 is

annexed to Plaintiff's Affirmation in Support as EXHIBIT J and incorporated by reference herein.

It is respectfully submitted that as a matter of law Defendant may only rely upon grounds to deny coverage specified in the denial letter; and the specified ground of denying coverage, namely Section II.B. of the Policy as it pertains to receiving "approval" from Defendant prior to incurring any clean-up costs, is void as against public policy.

### III. DISCUSSION

#### *A. Legal Standard*

"Summary judgment on a claim or defense will be granted when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(a) and (b); Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The moving party bears the burden of establishing the nonexistence of any genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Celotex,* 477 U.S. at 331." Westport Resources Investment Services, Inc. v. Chubb Custom Ins. Co., 2003 WL 22966305 (S.D.N.Y. 2003).

#### *B. Section II.B Of The Policy Should Be Declared Void As Against Public Policy*

"To begin, at this intersection of contract law and public policy, the Court is mindful that "when [a] court[ ] [is] asked to strike down on grounds of public policy a contractual arrangement on its face consensual ... [c]ases are not decided, nor the law appropriately understood apart from an informed and particularized insight into the factual circumstances of

5

the" case. *Southwestern Sugar & Molasses Co. v. River Terminals Corp.*, 360 U.S. 411, 421, 79 S.Ct. 1210, 3 L.Ed.2d 1334 (1959) (citation omitted); *see Madison Square Garden, L.P. v. NHL*, 2008 WL 4547518, at *7, 2008 U.S. Dist. LEXIS 80475, at *21 (S.D.N.Y. Oct. 10, 2008) (" *MSG v. NHL*") (quoting 17A C.J.S. *Contracts* § 218 (2008) ("There is no absolute rule by which to determine what contracts are against public policy, but each case must be determined from all the circumstances thereof, the courts declaring a contract void for such reason only where it is clearly contrary to the public interests ....")). In making such a determination in this case, the Court must consider competing public policy concerns." Xerox Corp. v. Media Sciences, Inc., 609 F.Supp.2d 319 (S.D.N.Y. 2009)

An agreement may be unenforceable in New York as contrary to public policy even in the absence of a direct violation of a criminal statute, if the sovereign has expressed a concern for the values underlying the policy implicated. *See* Walters v. Fullwood, 675 F.Supp.155 (S.D.N.Y. 1987).

That which conflicts with the morals of the time, and contravenes any established interest of society may be said to be 'against public policy.' Public policy does not mean simply sound or good policy but it means the policy of the state established for the public weal either by law or by judicial decisions. See Hanfield v. A. Broido, Inc., 3 N.Y.S.2d 463 (1938)

Agreements by which public powers of municipality are surrendered without express permission of legislature are beyond powers of municipality and are void. *See* Village of Upper Nyack v. Christian and Missionary Alliance, 540 N.Y.S.2d 125 (1099) *aff'd* 155 A.D.2d 530 (2d Dep't. 1989) *Citing* Parfitt v. Furguson, 53 N.E.707 (1899)

"[C]ourts must not be timid in voiding agreements which tend to injure the public good or contravene some established interest of society" Stamford Bd. of Educ. V. Stamford Educ. Ass'n, 697 F.2d 70 (2d Cir. 1982)

The rules, regulations and laws that Section II.B. of the Policy conflicts with, and contravenes, are so numerous that they would be unable to each be named if this Memorandum of Law is to be kept under twenty-five (25) pages. For one, the United States Environmental Protection Agency is authorized, through Title 42 of U.S.C.A., to commence an action against facility owners, such as Plaintiff, for "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan." *See* 42 U.S.C. § 9607(a). In December of 1980, Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), which "creates a regime of broad-ranging liability, permitting the government to recover its remediation expenses directly from parties responsible for pollution, and authorizing private parties to pursue contribution or indemnification from potentially responsible parties for expenses incurred responding to environmental threats." Commander Oil Corp. v. Barlo Equip. Corp., 215 F.3d 321, 326

The Environmental Protection Agency, for instance, has the authority to issue a unilateral administrative removal order under CERCLA § 106(a) if it found that the release or threatened release of hazardous substances from a site "may be an imminent and substantial endangerment to the public health or welfare or the environment." *See* 42 U.S.C. § 9606(a).

Moreover, the Resource Conservation and Recovery Act of 1976 ("RCRA"), 42 U.S.C. § 6972, is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste. *See* Mehrig v. KFC Western, Inc., 516 U.S. 479 (S. Ct. 1996). The

Supreme Court of the United States has held that the RCRA empowers the Environmental Protection Agency "to regulate hazardous wastes **from cradle to grave....**" (emphasis added) *See* City of Chicago, et al. v. Environmental Defense Fund, et al., 511 U.S. 328 (S. Ct. 1994)

Of course, there is also the New York State Department of Environmental Conservation, and its plethora of rules and regulations, including but not limited to the Environmental Conservation Law, Chapter IV, Part 375 "Remedial Program Soil Cleanup Objectives" which "applies to the development and implementation of the remedial programs for soil and other media set forth in subparts 375-2 through 375-4." See ECL § 375-6. Then there is the New York City Department of Environmental Protection, which must comply with State and Federal laws through enforcement of the Local Laws of the City of New York, specifically the "New York City Community Right-to-Know Law" the purpose of which is "to protect the public from the dangers associated with hazardous substances, extremely hazardous substances and regulated toxic substances by mitigating the harm posed by the release of such substances." See § 41-02 of the Local Laws of the City of New York, New York City Community Right-to-Know Law.

Defendant's insureds, such as Plaintiff, that are required to abide by Defendant's provision of consent before complying with State and Federal rules, regulations and laws regarding contamination clean up, are unquestionably influenced on whether to expeditiously abide by the law or wait to see whether their Defendant "approves" the clean-up. Awaiting approval from a private for-profit insurance company prior to clean-up is contrary to the public's interest, is dangerous, is offensive to the parameters of pollution regulation, and is an absolute negative impediment on the sense of justice for the public.

This Honorable Court need only look to the undisputed facts of this instant matter as proof of the way Defendant conducts itself under such circumstances. Instead of acting in good

faith to determine those items which they agree should have been incurred, and disputing those items which they disagree with the incurrence, Defendant denied coverage for *everything* pursuant to Section II.B. of the Policy. It is respectfully submitted that neither the time between Plaintiff incurring the cost and submitting the claim, nor the amount of monies paid out-of-pocket, had any role in Defendant's denial. The simple act of "inurr[ing] clean-up costs from Catlin without prior approval" was enough for Defendant to instantly deny the claim. Defendant has proven themselves to be motivated only by finding reasons to deny coverage and will rely upon Section II.B. of the Policy to do so.

This is incredibly alarming in light of the fact that this is not an arm's length contract between two parties for the sale of goods, or a real estate lease or rental agreement, but rather an insurance policy that is issued to an unknown amount of policyholders in the target markets of commercial real estate, manufacturers, medical facilities, chemical and energy risks, construction materials manufacturers, and any other commercial property owners engaging in construction and renovation activities throughout the United States.

Section II.B. of the Policy unlawfully put insureds in the position where they must wait for Defendant's "approval" prior to incurring clean-up costs while disregarding the applicable laws or governmental directives, or commence clean-up and incur costs and receive a denial letter from Defendant for everything. Defendants' insureds cannot even pick up a shovel before Defendant approves such an expenditure.

### C. *Defendant Has Waived, And Is Estopped From Raising, Any Additional Grounds For Denial Other Than That Which Was Set Forth In The Denial Letter Dated January 24, 2014*

While many of Defendant's Affirmative Defenses are boilerplate in nature, several Affirmative Defenses purport to establish a defense to the within action based upon Plaintiff's

9

non-compliance with the Subject Policy, in whole or part, beyond solely Section II.B. of the Policy. As set forth in full below, Defendant has unequivocally waived and abandoned any defense other than Plaintiff's alleged non-compliance with Section II.B. of the Policy, and is estopped from asserting those herein as a matter of law. See EXHIBIT J.

"In the insurance context, New York law defines waiver as "a voluntary and intentional relinquishment of a known right." *Albert J. Schiff Associates, Inc. v. Flack,* 51 N.Y.2d 692, 698, 435 N.Y.S.2d 972, 975, 417 N.E.2d 84, 87 (1980). Waiver may be found "where there is direct or circumstantial proof that the insurer intended to abandon the defense." *Id.* (citing *Kiernan v. Dutchess County Mutual Ins. Co.,* 150 N.Y. 190, 195, 44 N.E. 698 (1896)). An "implied waiver ... exists when there is an intention to waive unexpressed, but clearly to be inferred from circumstances...." *Kiernan* at 195, 44 N.E. at 699. An irrevocable waiver may be found where "the words and acts of the insurer reasonably justify the conclusion that with full knowledge of all the facts it intended to 'abandon or not to insist upon the particular defense afterward relied upon'...." *Id.* (citation omitted)." State of N.Y. v. AMRO Realty Corp., 936 F.2d 1420 (C.A.2 1991)

Defendant's assertion, for instance, that the denial of Plaintiff's covered pollution claim was predicated upon Plaintiff's failure to provide notice upon *discovery* of the pollution is incorrect. The text of the denial letter only referenced Section II.B. of the Policy in disclaiming coverage:

> *Coverage Position:*
>
> *Disclaimer of Coverage*
>
> *Testing was performed on February 1, 2013, and the disposal appears to have been completed in or around April 2013. SI Ventures incurred clean-up costs without prior written consent from Catlin. Accordingly, pursuant to the*

10

> *requirements set forth in Section II. B. of the Policy, coverage is not afforded for such costs.* See EXHIBIT G.

In Appell v. Liberty Mutual Ins. Co., 22 A.D.2d 906 (2d Dep't. 1964), *aff'd without opinion*, 17 N.Y.2d 519, 267 N.Y.S.2d 516, 214 N.E.2d 792 (1966), the Court of Appeals affirmed a decision holding an insurer had waived its late-notice-of-occurrence defense because its original disclaimer did not mention that defense.

Several years later, the New York Court of Appeals fully discussed the "waiver of defense" by a carrier in, General Acc. Ins. Group v. Cirucci, 46 N.Y.2d 862 (Ct. of App. 1979): "[a]lthough, under the facts of this case a disclaimer might have been premised on [a certain ground], since this ground was not raised in the letter of disclaimer, it may not be asserted now." The New York Court of Appeals opined, "[a]lthough an insurer may disclaim coverage for a valid reason (Insurance Law, s 167, subd. 8) the notice of disclaimer must promptly apprise the claimant with a high degree of specificity of the ground or grounds on which the disclaimer is predicated. Absent such specific notice, a claimant might have difficulty assessing whether the insurer will be able to disclaim successfully. This uncertainty could prejudice the claimant's ability to ultimately obtain recovery. In addition, the insured's responsibility to furnish notice of the specific ground on which the disclaimer is based is not unduly burdensome, the insurer being highly experienced and sophisticated in such matters." *Id.*

There is a long line of cases in which New York courts have found that an insurance company's denial of coverage based on a specified ground precluded it from relying on another, unspecified ground, later in contesting coverage. *See e.g.* Aguirre v. City of New York, 214 A.D.2d 692 (2d Dep't. 1995) (holding that the insurer's defense to insureds' claim, that insureds did not comply with notice provision of policy, was waived when not asserted in insurer's original letter of disclaimer, which advised insureds that coverage was being denied solely on

11

another ground); Fabian v. Motor Vehicle Acid. Indem. Corp., 111 A.D.2d 366 (2d Dep't. 1985) ("Allstate, in its letter of disclaimer, failed to assert the alleged non-cooperation of its [policyholder]. Thus, Allstate cannot now assert that as a basis for its disclaimer."); *see also,* State of New York v. AMRO Realty Corp., 936 F.2d 1291 (2nd Cir. 1991) (carrier that sent letters declining coverage but never mentioning untimely notice as a ground was deemed to have waived late notice as a defense).

The United States Court of Appeals, Second Circuit, "has unequivocally recognized the rule set out in this line of cases and has previously held that "[i]t is settled that '[w]hen one specific ground of forfeiture is urged against the claim, and a refusal to pay is based upon a specific ground, all other grounds are waived.' " *Luria Bros. & Co. v. Alliance Assurance Co.,* 780 F.2d 1082, 1090 (2d Cir.1986) (quoting 16C Appleman & Appleman, "Insurance Law and Practice," § 9260 at 393 (1981))." State of N.Y. v. AMRO Realty Corp., *supra.*

In State of N.Y. v. AMRO Realty Corp., *supra*, a case which is strikingly similar to the factual scenario herein, the United States Court of Appeals, Second Circuit held where an insurance carrier (Lumbermens) sent letters declining coverage but never mentioned untimely notice as a ground, the carrier must be deemed to have waived late notice as a defense. The United States Court of Appeals, Second Circuit reversed the District Court's conclusion that Lumbermens had not waived its late-notice defense to coverage, and held New York law conclusively deems an insurer to have intended waiver in the circumstances. *Id.*

This Honorable Court too, citing State of N.Y. v. AMRO Realty Corp., *supra.,* and General Accident Insurance Group v. Cirucci, *supra.,* has previously held "[i]t is a well settled principle of New York law that once an insurer specifies the particular grounds upon which it disclaims coverage, the insurer waives its right to subsequently disclaim based on other

12

unspecified grounds, provided the insurer possessed sufficient knowledge of the circumstances regarding the unasserted ground", and "an insurer's assertion of certain defenses to coverage is deemed *conclusive* evidence of the insurer's intent to waive other unasserted grounds." Olin Corp. v. Insurance Co. of North America, 2006 WL 509799 (S.D.N.Y. 2006)

Moreover, the denial letter dated January 24, 2014 by Matthew J. Ford, Esq., Defendant's Senior Claims Examiner, Professional Construction Claims, *does not* contain any reservation of rights to deny coverage under any alternative theories other than those expressly stated in the denial letter. Indeed, it is common practice, if not a boilerplate addition to all letters sent from carriers to "reserve all of their rights under the policy." Thus, Defendant is unable to rebut the fact that it waived all, if any, policy provisions not expressly set forth in the denial letter. *See e.g.* McAlpin v. RLI Ins. Co., 509 F.Supp.2d 242 (W.D.N.Y. 2007)

Therefore, Defendant may not assert any other ground to deny coverage other than Section II.B. As set forth above, Section II.B. of the Policy is void as against public policy because it permits Defendant to affect, impede, or otherwise interfere with an insured's expeditious compliance with the law as it pertains to pollution clean-up, which has a broad and dangerous impact upon the public and the environment.

## IV.  CONCLUSION

Where an insured is obliged to take action and commence pollution clean-up pursuant to statutes, laws, and/or regulations, some of which are set forth above, it is respectfully submitted that it is significantly contrary to public policy to uphold a provision in an insurance policy which permits an insurance company to affect, impede, or otherwise interfere with an insured's expeditious compliance with the law as it pertains to pollution clean-up. As a matter of law, Section II.B. of the Policy must be declared void as against public policy.

No application for the relief requested herein has been made in this or any other court.

WHEREFORE, it is respectfully requested that the within motion for an Order, (1) pursuant to Rule 56, granting summary judgment against Defendant CATLIN SPECIALTY INSURANCE COMPANY on the issue of liability, and setting this matter down for inquest to determine Plaintiff's damages; (2) pursuant to Rule 56 dismissing those affirmative defenses relying upon any substantive provisions of the insurance policy; and (3) for such other and further relief as this Court deems just and proper.

Dated: Great Neck, New York
October 27, 2014

_____
SCOTT E. AGULNICK (SA1880)
STEVEN A. KOTCHEK (SK0815)

Civil Case No: 14 Civ. 02261 (TPG)(HBP)
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SI VENTURE HOLDINGS, LLC (also d/b/a SI VENTURES),

Plaintiff(s),

-against-

CATLIN SPECIALTY INSURANCE COMPANY,

Defendant(s).

**MEMORANDUM OF LAW**

**GREENBLATT & AGULNICK, P.C.**
*Attorneys for PLAINTIFF(s)*
*Office and Post Office Address, Telephone*
55 Northern Boulevard, Suite 302
Great Neck, New York 11021
Tel: (718) 352- 4800
Fax: (718) 732- 2110

**"WE DO NOT ACCEPT SERVICE BY ELECTRONIC TRANSMISSION (FAX)"**

To:
Attorney(s) for DEFENDANT(S)

**Certification pursuant to FRCP 11**
It is hereby certified that, to the best of the undersigned's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of the paper and/or the contentions herein are not frivolous as defined in FRCP 11.

10/27/14
Dated

Scott E. Agulnick (SA1880)

Service of a copy of the within                    is hereby **admitted**

..........................................................................................
Attorney(s) for