UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

SI VENTURE HOLDINGS, LLC,

          Plaintiff,

  - against -

CATLIN SPECIALTY INSURANCE,

          Defendant.

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/13/15

**CORRECTED
OPINION AND ORDER**

**14 Civ. 2261 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION AND BACKGROUND[1]

This case presents an issue of first impression under New York law —
whether a contract that requires an insured party to seek approval from its insurer
before expending funds for environmental clean-up is void as against public
policy. The facts are not in dispute. SI Venture Holdings ("SI"), a real estate
development company, entered into an insurance contract with Catlin Specialty
Insurance ("Catlin") that included the following provision ("Consent Provision"):

> The Insurer shall pay on behalf of the Insured for Clean-Up Costs
> and related Claim Expense in excess of the Deductible stated in

---

[1]    The purpose of this Corrected Opinion is to change an error in the
appearance sheet. The contact information for plaintiff's counsel was incorrect in
the original version.

the Declarations because of a Pollution Condition[2] discovered by the Insured during the Policy Period . . . *but only if the Insured notifies the Insurer of the Pollution Condition, in writing, during the Policy Period or any applicable Extended Reporting Period.* . . . The Insured shall not assume or admit liability, make any payment, consent to any judgment, settle any Claim or Protective Third Party Claim *or incur any Clean-Up Cost*, Claim Expense or Protective Third Party Claims Expense without prior written consent of the Insurer, which consent shall not be unreasonably withheld.   The Insurer shall not be liable for any expense, settlement, assumed obligation or admission to which it has not consented.[3]

In February 2013, SI tested the soil of one of its properties in Staten Island, only to discover that it was contaminated with petroleum.[4] The level of contamination was such that SI thought that it was obligated — based on its understanding of New York law — to transport the soil to a disposal site in New Jersey.[5]  SI did so.

---

[2]       The contract defines "Pollution Condition" as "the actual or alleged discharge, dispersal, release, seepage, migration, growth, or escape of," *inter alia*, "toxic chemicals . . . waste materials, contaminants, or other irritants, into or upon land, the atmosphere, any structure on land, the atmosphere contained within that structure, or any watercourse or body of water, including groundwater." Catlin Site Pollution Liability Insurance Policy, Exhibit B to Affirmation of Scott E. Agulnick, Counsel for SI Ventures, in Support of SI Venture's Motion for Summary Judgment, at 6.

[3]       Defendant's 56.1 Statement of Undisputed Material Facts ("Def. 56.1") ¶¶ 2, 4 (emphasis added). *Accord* Plaintiff's Response to Defendant's 56.1 Statement of Undisputed Material Facts ("Pl. 56.1") ¶¶ 2, 4.

[4]       *See* Def. 56.1 ¶ 6; Pl. 56.1 ¶ 6.

[5]       *See id.*

-2-

Then, six months later, it sent a notice of claim to Catlin, requesting coverage of $250,000 worth of clean-up costs.[6] Catlin denied that request, citing SI's failure to comply with the Consent Provision.[7]

   SI concedes that it did not seek Catlin's consent before embarking on the soil disposal. Nor does SI dispute that by failing to obtain such consent, SI breached the Consent Provision. Instead, SI argues that the Consent Provision is unenforceable as against public policy, because it impedes compliance with environmental regulations. According to SI, if an insured party must seek approval from its insurer before incurring clean-up costs, the practical effect will be that less clean-up takes place — to the public's detriment. Therefore, SI has moved for summary judgment, asking the Court to set aside the Consent Provision, and to require Catlin to reimburse SI the amount that it expended in connection with the soil disposal. Catlin has cross-moved for summary judgment, asking the Court to enforce the Consent Provision — and accordingly, to release Catlin from any putative coverage obligations.[8] For the reasons set forth below, SI's motion is

---

[6]  *See* Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5.

[7]  *See* Def. 56.1 ¶ 8; Pl. 56.1 ¶ 8.

[8]  Summary judgment is appropriate where, as here, "there is 'no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'" *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

-3-

DENIED, and Catlin's motion is GRANTED.

## II. APPLICABLE LAW

### A. Construction of Insurance Contracts

Under New York law, "unambiguous provisions of an insurance
contract must be given their plain and ordinary meaning, and the interpretation of
such provisions is a question of law for the court."[8] Pursuant to this general rule,
consent-to-settle provisions — requiring insured parties to give insurers notice
before entering into voluntary settlement agreements — are "routinely enforced" as
"a condition precedent to coverage."[9] This same is true, moreover, of settlements
between private actors and public agencies that arise from enforcement actions. In
2008, for example, the New York Court of Appeals enforced a consent-to-settle
provision against Bear Stearns, in connection with a settlement that it entered into

---

the evidence is such that a reasonable jury could return a verdict for the nonmoving
party.").

[8]     *White v. Continental Cas. Co.*, 9 N.Y.3d 264, 267 (2007).

[9]     *Continental Cas. Co.v. Ace Am. Ins. Co.*, No. 07 Civ. 958, 2009 WL
857594, at \*3 (S.D.N.Y. Mar. 31, 2009) (applying New York law). *Accord TLC
Beatrice Int'l Holdings v. Cigna*, No. 97 Civ. 8589, 2000 WL 282967, at \*4 (Mar.
16, 2000) (enforcing an insurance contract whose "plain language . . . require[d]
that the insured obtain the written consent of the insurer before agreeing to settle a
claim[] [a]s a condition precedent to coverage") (internal citation omitted); *AIU
Ins. Co. v. Valley Forge Ins. Co.*, 758 N.Y.S.2d 16, 17 (1st Dep't 2003)
("Inasmuch as [the insurer] . . . did not take part in the settlement negotiations or
agree to the [settlement], [it] is not required to contribute to that settlement.").

-4-

with the Securities and Exchange Commission ("SEC").[10]  And Judge Katherine

Forrest of this District recently enforced a similar provision against Northrop

Grumman, in connection with an informal agreement it made with the United

States Navy to spearhead the clean up of land adjacent to a weapons plant.[11]

## B.    Void as Against Public Policy

There is no magic formula for determining when a contract — or a

particular provision of a contract — is void as against public policy.[12]  Under New

York law, "[a]n agreement may be unenforceable [] as contrary to public policy

even in the absence of a direct violation of a criminal statute, if the sovereign has

expressed a concern for the values underlying the policy implicated."[13]  A contract

is "contrary to public policy, not only if it directly violates a statutory prohibition .

---

[10]    *See Vigilant Ins. Co. v. Bear Stearns*, 10 N.Y.3d 170, 177-78 (2008).

[11]    *See Travelers Indem. Co. v. Northrop Grumman Corp.*, 999 F. Supp.
2d 552 (S.D.N.Y. 2014).

[12]    *See Madison Square Garden v. NHL*, No. 07 Civ. 8455, 2008 WL
4547518, at *7 (S.D.N.Y. Oct. 10, 2008) ("There is no absolute rule by which to
determine what contracts are against public policy, but each case must be
determined from all the circumstances thereof."). *See also Southwestern Sugar &
Molasses Co. v. River Terminals Corp.*, 360 U.S. 411, 421 (1959) (invalidating an
agreement "on grounds of public policy" demands "an informed and particularized
insight into the factual circumstances of the case").

[13]    *Walter v. Fullwood*, 675 F. Supp. 155, 161 (S.D.N.Y. 1987) (applying
New York law and reviewing cases).

-5-

. . but also if it is contrary to the social judgment on the subject implemented by the [relevant] statute."[14]

## III.   DISCUSSION

SI argues that the Consent Provision "conflicts with [] and contravenes" numerous environmental regulations, because it leaves insured parties in a position — theoretically — of having to finance clean-up without the benefit of reimbursement.[15]  In practice, this means that insured parties will be unwilling (or in some cases, unable) to comply with environmental regulation "expeditious[ly]" — an outcome that would clearly imperil the public interest.[16]

There are two problems with SI's position. *First*, clauses such as the Consent Provision are routinely enforced, which means that even if SI's position were appealing on policy grounds, adopting it would effectively "revolutionize" New York insurance law.[17] *Second*, SI's argument sweeps too broadly. The rule

---

[14]    *In re Estate of Walker*, 64 N.Y.2d 354, 359 (1985). *Accord* Plaintiff's Memorandum of Law in Support of Summary Judgment ("Pl. Mem."), at 5-6 (collecting cases).

[15]    Pl. Mem. at 7.

[16]    Plaintiff's Reply Memorandum of Law in Further Support of Summary Judgment ("Reply"), at 6.

[17]    Defendant's Memorandum of Law in Support of Cross-Motion for Summary Judgment ("Def. Mem."), at 1.

that SI proposes would be unfair to insurers, because it would preclude even *reasonable* withholding of consent to reimburse an insured party's clean-up costs.

**A. This Court Declines to Revolutionize New York Insurance Law**

SI has pointed to no case — nor have I been able to locate one — in which a consent provision, like the one at issue here, was deemed unenforceable on public policy grounds. On the other side, by contrast, Catlin has pointed to ample case law in which consent provisions have been enforced. The consensus among New York courts (and federal courts applying New York law) is clear — consent provisions are typically upheld to their letter.[18]

SI responds by pointing out that none of the cases invoked by Catlin directly addressed the public policy argument that SI presses here — so the question is open.[19] That is true. But it hardly follows that the cases invoked by Catlin are irrelevant. Silence can be revealing. That no court has ruled on the public policy implications of consent provisions suggests that few, if any, courts have *confronted* such challenges — which in turn suggests that such challenges are

---

[18] *See id.* at 11.

[19] *See* Reply at 5. *See also Southwestern Sugar & Molasses Co*, 360 U.S. at 421 (explaining that the decision to invalidate an agreement "on grounds of public policy . . . [cannot be] underst[ood] apart from an informed and particularized insight into the factual circumstances of the case").

rarely, if ever, made.[20]

In short, SI's argument is either legally innovative or legally precarious — and very likely both. Either way, it is not the role of this Court, exercising diversity jurisdiction, to take the radical step that SI's position would require. On appeal, SI will have an opportunity to request certification to the New York Court of Appeals (and the Second Circuit will have discretion to order such certification *sua sponte*), at which point the proper institution — the final arbiter of state law — will be able to entertain SI's argument.[21] For now, federalism

---

[20] This is surely not the first time that a consent provision, strictly construed, stands to impact the public interest. In *Vigilant Insurance v. Bear Stearns*, for example, the New York Court of Appeals had to decide whether a consent provision — identical in substance to the one here — foreclosed Bear Stearns' coverage claim after it entered into a settlement with the SEC without having first obtained consent from its insurer. *See* 10 N.Y.3d 170. The argument that SI champions in this case — that policy considerations cast doubt on contract terms that discourage compliance — would also have applied in *Vigilant Insurance* (albeit in a more attenuated fashion, because financial compliance rarely involves the same kind of temporal urgency as environmental compliance). Nevertheless, the Court of Appeals saw no need to explore the policy implications of the consent provision it ultimately enforced according to its "plain and ordinary meaning." *Id.* at 177 (internal citations omitted). This observation is suggestive (though not dispositive) of the state of New York law. *See Giuffre Hyundai, Ltd. v. Hyundai Motor Am.*, 756 F.3d 204, 209 (2d Cir. 2014) (quoting *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005)) (when sitting in diversity, federal courts should aim to "'predict how the forum state's highest court would decide [an] issue[].'"). *Accord Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013).

[21] If this Court were empowered to certify questions to the New York Court of Appeals, I would be inclined to do so in this case. But this Court is not so

principles counsel in favor of rejecting that argument.

## B. The Equities Favor Catlin

The second problem with SI's position is that it would effectively strip Catlin — and, by extension, all insurers — of the ability to reasonably object to compliance-related expenditures that an insured party intends to make. As written, the parties' agreement prohibits Catlin from "unreasonably with[holding]" consent with regard to, *inter alia*, clean-up costs.[22] Therefore, had SI requested Catlin's consent, and had Catlin decided to withhold it, SI would have had legal recourse — it could have sought to enforce the "consent shall not be unreasonably withheld" clause against Catlin, and to seek recovery, on that basis, for whatever hardship Catlin's withholding of consent might have caused. Notably, SI makes no effort to argue that the "consent shall not be unreasonably withheld" clause is somehow inoperative, or that it affords insufficient protection. Instead, SI focuses

---

empowered. Certification must wait for appeal. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27 ("Whenever it appears to the Supreme Court of the United States, any United States Court of Appeals, or a court of last resort of any other state that determinative questions of New York law are involved in a case pending before that court for which no controlling precedent of the Court of Appeals exists, the court may certify the dispositive questions of law to the Court of Appeals.").

[22]     *See* Def. 56.1 ¶ 4 ("The Insured shall not assume or admit liability, make any payment, consent to any judgment, settle any Claim or Protective Third Party Claim or incur any Clean-Up Cost, Claim Expense or Protective Third Party Claims Expense without prior written consent of the Insurer, *which consent shall not be unreasonably withheld*.") (emphasis added).

on (hypothetical) scenarios in which an insured party (1) requests consent from its insurer, (2) receives no consent, but (3) is still required (by law) to proceed with, and foot the bill for, compliance efforts. According to SI, the mere possibility of this outcome — enabled by enforcement of the Consent Provision here — would discourage compliance and imperil the public good.

SI's argument proves too much. According to SI, even when an insurer's decision to withhold its consent with regard to specific clean-up costs is *reasonable*, that result would still contravene the public interest. It is hard to believe that the requirements of public policy would so dramatically curtail insurers' rights. Under the rule advocated by SI, insurers would *never* be able to withhold consent regarding proposed clean-up costs, no matter how exorbitant or excessive. But an insurance company should be allowed to negotiate for some mechanism to refuse to underwrite unreasonable expenditures incurred by insured parties, which is just what the Consent Provision provides.

To be sure, if the agreement here did *not* contain a clause prohibiting Catlin from unreasonably withholding its consent — if Catlin had carte blanche, under the terms of the agreement, to refuse all reasonable requests — a different outcome might well be warranted. In the abstract, SI's concerns about insurers

"imped[ing]" environmental clean-up are certainly valid.[23]  In practice, however,
there is little reason to think SI's concerns will materialize.  As it stands, Catlin is
prohibited — by the very same provision that SI seeks to have invalided — from
unreasonably refusing to reimburse an insured party for clean-up costs.[24]  As
written, the Consent Provision strikes a sensible balance between competing
interests.  If and when the New York courts consider the question, they may
conclude that policy considerations require disrupting this balance.  In the absence
of further guidance, however, I decline to draw that conclusion here.

---

[23]     Reply at 6.  In this vein, it would certainly be a different situation if SI
had been *ordered* — for example, by a court or administrative agency — to engage
in the soil disposal.  In that case, strictly enforcing the Consent Provision would
likely contravene public policy, because SI would have no choice in the matter,
and the purpose behind the Consent Provision — to "ensure[] that [insurers are]
given the opportunity to [work] with insured[s] in managing the costs for a clean-
up before they are incurred" — would no longer be served by the Provision's
enforcement.  Def. Mem. at 14.  If the clean-up costs were compulsory, *i.e.*, if they
were set at a non-negotiable level by a regulatory body of some kind, there would
be no latitude for "managing costs."  And it would plainly grate against the public
interest to let insurers walk away from costs involuntary incurred by insured
parties, simply because of a notice requirement — which, under such
circumstances, would be a mere formality.

[24]     Nor does the parties' course of dealing give SI any reason to think that
Catlin is prone to unreasonably withhold consent for environmental clean-up.  In
fact, SI never *requested* such consent — and it has presented no other evidence to
suggest that Catlin would likely have failed to be cooperative in the event that
consent had been requested.  *See* Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5; Def. Mem. at 14-15.

-11-

## IV.   CONCLUSION

For the reasons set forth above, SI's motion is DENIED, and Catlin's cross-motion is GRANTED.  The Clerk of the Court is directed to close both motions (Dkt. Nos. 7 and 13), and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             July 13, 2015

-12-

-Appearances-

**For Plaintiff:**

Scott E. Agulnick, Esq.
Greenblatt & Agulnick, P.C.
55 Northern Blvd. Suite 302
Great Neck, NY 11021
(718) 352-4800

**For Defendant:**

Patrick M. Tomovic, Esq.
Hodgson, Russ, LLP
140 Pearl Street, Suite 100
Buffalo, NY 14202
(716) 848-1496